(995 P.2d 916)
No. 79,614

STATE OF KANSAS, *Appellee*, v. DONALD A. MAGGARD, *Appellant*.

Opinion filed January 21, 2000.

*Rebecca E. Woodman*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender for appellant.

*Debra S. Peterson*, assistant district attorney, *Doyle Baker*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before JUSTICE SIX, presiding, TERRY L. BULLOCK, District Judge, assigned, and ROBERT W. FAIRCHILD, District Judge, assigned.

FAIRCHILD, J.: Defendant, Donald Maggard, appeals from his jury conviction of attempted rape. He contends that the trial court erred in (1) refusing to instruct the jury on diminished capacity and, at the same time, instructing the jury that it must consider

the case without favoritism or sympathy for either party; and (2) finding defendant competent to stand trial.

We agree that the combination of refusing to instruct on diminished capacity and giving the instruction on favoritism or sympathy was error. We reverse and remand for a new trial.

Defendant is mentally retarded and has a long-standing history of periods of institutionalization. The witnesses categorized the degree of defendant's mental retardation as being mild and possibly moderate. Defendant was also diagnosed with Intermittent Explosive Disorder, an inability to control emotions resulting in especially explosive behavior.

On the evening of November 17, 1995, defendant entered a local Total store and asked the lone female clerk to scan his Powerball tickets. Becoming upset and frustrated when the machine malfunctioned, defendant left the store only to return a short while later. Defendant stood by the counter. When the other customers left, he told the clerk the toilet was leaking in the restroom. When the clerk went to investigate, defendant pushed her inside the restroom. He locked the door, pushed her to the floor, and told her he was going to rape her. The clerk was able to swing her leg up and kick him in the face. As she did so, some small change fell out of her pocket. Defendant reached for the change, apparently distracted from his sexual attack. The clerk escaped from the restroom and called 911. Defendant hurriedly left the store. From the clerk's description, officers quickly identified defendant as the likely suspect.

Defendant was charged with attempted rape. After approximately a 16-month delay caused by hearings and hospitalizations resulting from questions about defendant's competency to stand trial, he was convicted by a jury of attempted rape. The facts surrounding the defendant's competency will be explored more fully in the discussion of that issue.

The Court's Instructions

Defendant claims the trial court erred in refusing to instruct the jury on diminished capacity. "Evidence of diminished capacity is admissible for the limited purpose of negating specific intent." *State v. Friberg*, 252 Kan. 141, Syl. ¶ 1, 843 P.2d 218 (1992). An

attempt to commit an offense requires specific intent. Therefore, attempted rape requires a showing of specific intent to commit the crime of rape. See *State v. Collins*, 257 Kan. 408, Syl. ¶ 4, 893 P.2d 217 (1995). In discussing diminished capacity, our Supreme Court has said:

"[T]he criminal law concept of diminished capacity requires the presence of a mental disease or defect not amounting to legal insanity which a jury may consider in determining whether the defendant has the specific intent required for the crime charged. Mere personality characteristics such as poor impulse control, a short temper, frustration, feelings of dependency, 'snapping,' lack of concern for the rights of other people, etc., do not constitute a mental disease or defect bringing the doctrine of diminished capacity into play." *State v. Wilburn*, 249 Kan. 678, 686, 822 P.2d 609 (1991).

The trial court here ruled:

"As to the instruction of diminished capacity, the Court, after consideration of the testimony given, does not find that any evidence was given that suggests that Mr. Maggard's problems arise above what prior cases have referred to as personality characteristic of poor impulse control. Also, there has been a lack of testimony that [make] a direct causal connection between Mr. Maggard's capacity and the acts on November 17th, 1995."

Defendant contends the evidence of his mental retardation and his diagnosis of Intermittent Explosive Disorder were more than sufficient to warrant an instruction on diminished capacity. When reviewing the district court's refusal to give a requested jury instruction, appellate courts must view the evidence in the light most favorable to the party requesting the instruction. *State v. Hunter*, 241 Kan. 629, Syl. ¶ 9, 740 P.2d 559 (1987).

Defendant's expert, Dr. Robert Barnett, testified that Intermittent Explosive Disorder is a behavioral disorder; however, it was his opinion that because of the mental retardation, "[the defendant] might have more difficulty controlling this marginally, because I don't think with his level of intelligence he necessarily can understand the consequences of behavior; nor does he have the judgment to really think them through before he acts on them; and that may . . . make the problem more serious." When asked about the combined effects of mental retardation and Intermittent Explosive Disorder, Dr. Barnett stated, "He acts on his impulses

without thinking about them before he acts. He has a limited ability to understand the consequences of his behavior after he acts."

When asked whether defendant knows right from wrong, Dr. Barnett answered, "I'll have to answer that in two ways. He will tell you that he understands right from wrong. He is a very concrete individual. He thinks primitively in many cases. And I think, for example, part of his understanding of right or wrong may be more associated with—for example, he may consider a behavior acceptable if he doesn't get caught as an issue of right or wrong, rather than understanding that it's something that's bad for society or bad for others in general." Dr. Barnett stated that Intermittent Explosive Disorder is a mental illness that defendant cannot control. "He acts or reacts without thinking about it." Dr. Barnett admitted that he would be merely speculating if he were to give an opinion as to whether defendant was having an episode of Intermittent Explosive Disorder on November 17, 1995.

A trial court is not required to give an instruction on diminished capacity. Whether to instruct the jury on diminished capacity is a matter of trial court discretion. *Friberg*, 252 Kan. at 145. Even where some evidence of diminished capacity has been presented, the trial court is not required to instruct on diminished capacity. See *Wilburn*, 249 Kan. at 686.

There is no question evidence was presented that defendant was mentally retarded and had Intermittent Explosive Disorder. A reasonable interpretation of Dr. Barnett's testimony is that defendant has difficulty controlling his impulses to act and when he does act, he does not consider the consequences of his actions.

Although the trial court is not required to give an instruction on diminished capacity, even when faced with some evidence of diminished capacity, defendant's evidence unquestionably raised the issue of his capacity to form the specific intent to commit the crime for which he was charged. Contrary to the trial court's conclusion, the evidence showed that defendant suffers from more than a mere personality disorder with poor impulse control. Nevertheless, the trial court's decision not to give the diminished capacity instruction might not be error had not the trial court also granted the State's

request for an instruction that the jury should consider this case without favoritism or sympathy for or against either party.

Defendant argues the trial court abused its discretion by instructing the jury that it must consider this case without favoritism or sympathy for or against either party and that neither sympathy nor prejudice should influence it, pursuant to PIK Crim. 3d 51.07. Defendant contends the purpose of the instruction was to remove the jury's consideration of defendant's mental retardation.

PIK Crim. 3d 51.07 is an objectionable instruction that should be given only in very unusual cases because it tells the jury what not to do rather than what to do. See *State v. Sully*, 219 Kan. 222, 226, 547 P.2d 344 (1976). At the trial in this case, the State argued for giving the instruction based on the large amount of testimony regarding defendant's mental retardation. Defendant testified at trial. His speech was somewhat impaired, but his demeanor and actions on the stand are not reflected in the transcript. The record indicates that defendant's gait was somewhat impaired; that he made gestures during the trial, including making circles in the air with his fingers; and that he appeared extremely upset and seemed to be crying during the playing of the taped statement he gave officers. His demeanor, albeit likely to elicit sympathy, should have been considered by the jury in determining whether he was able to form the intent required in order to be found guilty of the crime of attempted rape.

The trial court found that "while this instruction is not normally given, there is a circumstance that has existed in this courtroom during this trial that I feel it is necessary to give the jury instructions on the possible intervention of sympathy into their deliberations."

Our Supreme Court has stated:

"When reviewing challenges to jury instructions, the instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous." *State v. Aikins*, 261 Kan. 346, Syl. ¶ 25, 932 P.2d 408 (1997).

We find that the effect of the trial court's instruction that the jury was to consider the case without sympathy for either party

combined with the trial court's refusal to instruct on diminished capacity was to remove from the jury's consideration defendant's capacity to form the intent necessary to commit the crime for which he was charged. The combination of these two rulings constitute an abuse of discretion by the trial court. Defendant's conviction is reversed, and the case is remanded for a new trial.

### Defendant's Competence to Stand Trial

The defendant contends that the trial court erred in finding he was competent to stand trial. He argues that because the court's initial finding was that he was incompetent to stand trial and would not be competent in the foreseeable future, it was not possible for him to later become competent. Defendant points out that his mental retardation is permanent.

The evaluation completed by Sedgwick County Department of Mental Health (Mental Health) found that defendant "meets some of the criteria for competency in that he understands the nature of his charges as well as the basics of legal proceedings." Mental Health was concerned that defendant's courtroom behavior might affect his ability to cooperate with his attorney in making a defense. Mental Health recommended a psychiatric evaluation to see if defendant's behavior would be amenable to medication management. Based on this recommendation the district court ordered that defendant be evaluated by Larned State Hospital. Based on the evaluation made by Larned State Hospital the court found that defendant was not competent to stand trial.

The defendant was admitted to Larned State Hospital for treatment and then transferred to Topeka State Hospital. Topeka State Hospital released defendant to the court. From the portions of the letter contained in the record we are unable to determine whether the Topeka State Hospital staff determined that the defendant was competent to stand trial at the time of his discharge. The trial court found that Topeka State Hospital determined defendant was competent to stand trial. After defendant was discharged from the hospital, he was evaluated by the defense's expert, Dr. Barnett. Dr. Barnett found that nothing had changed since the initial finding of incompetency and defendant remained incompetent to stand trial.

At the State's urging, the court ordered another evaluation. Comprehensive Community Care of Sedgwick County (Comcare) evaluated defendant and concluded he was competent to stand trial. At a competency hearing on March 19, 1997, the court found defendant competent to stand trial based primarily on Comcare's evaluation. Defendant maintains the trial court abused its discretion by relying on the findings made by Comcare rather than the conclusions of Dr. Barnett.

"On appeal, the reviewing court's inquiry on a trial court's determination that a defendant is competent to stand trial is whether the trial court abused its discretion." *State v. Peckham*, 255 Kan. 310, Syl. ¶ 6, 875 P.2d 257 (1994).

There was obviously a difference in opinion among the evaluators concerning defendant's competency to stand trial. There is a suggestion in the record that during his hospitalization defendant received medication for his condition. From the record we are unable to determine whether taking this medication would cause the defendant to become competent to stand trial. However, the trial court was entitled to rely on the Comcare evaluation in finding the defendant to be competent to stand trial. The trial court's reliance on the Comcare evaluation in determining that the defendant was competent to stand trial does not constitute an abuse of discretion.

Reversed and remanded.