(211 P.3d 166)
No. 100,039

STATE OF KANSAS, *Appellee*, v. JUSTIN L. PRUITT, *Appellant*.

Opinion filed June 19, 2009.

*Rick Kittel,* of Kansas Appellate Defender Office, for appellant.

*Nicholas J. Heim,* assistant county attorney, *Vernon E. Buck,* first senior county attorney, *Steve Six,* attorney general, for appellee.

Before McANANY, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: Justin Pruitt was charged with attempted burglary and battery. A jury convicted Pruitt of attempted burglary but did not convict him of battery. On appeal, Pruitt contends that a violation of an order in limine by the prosecutor, a *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), violation, and an improper jury instruction denied him a fair trial. We agree. In the alternative, Pruitt asserts that the cumulative effect of errors committed during trial denied him a fair trial. We also agree. Accordingly, we reverse and remand for a new trial.

Andrew Surmeier, an off-duty police officer in Lawrence, Kansas, testified that one summer night, while he was sitting on a porch talking on his cell phone, he saw a man crossing the street towards Surmeier's truck. The man walked to the driver's side of the truck and tried the handle to open it. As soon as Surmeier saw that the man was attempting to open the truck door, he stood up and asked

the man what he was doing. The man turned, saw Surmeier, and took off running. Surmeier chased after him, yelling that he was a police officer. Surmeier caught up with the man, grabbed him, and subdued him. Surmeier asked the man for his name and where he lived. The man stated that his name was Justin Pruitt and that he lived over on Washington Street. Pruitt testified that Surmeier attempted to put him in a choke hold. Nevertheless, Pruitt was able to free himself and run away.

Officer Herold Keiss and Surmeier went to Pruitt's residence. Keiss knocked on the door, and Gary Mason, the owner of the residence, answered the door. Keiss asked to speak to Pruitt. Mason asked Pruitt to come to the door. When Pruitt walked to the door, Surmeier identified him as the person he had subdued. Keiss arrested Pruitt and placed him in the back of his patrol car. After reading Pruitt his rights, Keiss questioned him about the incident. Pruitt stated "he didn't want to answer any questions."

In contrast, Pruitt testified that he had gone jogging because he was stressed over his family and that jogging helped calm him. As he was doing some push-ups in front of a blue house, he was tackled from behind. He did not know the person who tackled him and denied that the person said anything to him. Pruitt testified that after he was tackled, the person put his arm around his neck and began choking him. Pruitt was on his knees and was trying to push the person off because he could not breathe. Pruitt escaped from the person's hold and ran back to his house, where he immediately got in the shower. While in the shower, he was told by another person in the house that someone on the porch wanted to speak with him; Pruitt went out on the porch to talk with Surmeier and another police officer. The police officer asked Surmeier if he recognized Pruitt and then he arrested Pruitt and put him in the police car.

Pruitt was charged by complaint/information with attempted burglary in violation of K.S.A. 21-3715(c) and K.S.A. 21-3301, and battery in violation of K.S.A. 21-3412. A jury found him guilty of attempted burglary but not guilty of battery. Pruitt was sentenced to 12 months of imprisonment.

I. *Did the Trial Court Abuse its Discretion When it Denied Pruitt's Motions for a Mistrial?*

Pruitt contends that the trial court committed reversible error when it refused to grant a mistrial when a State's witness indicated that he knew Pruitt from "another incident," which implied a prior bad act, and when the State elicited a statement from a witness about Pruitt's post-*Miranda* silence, a violation of due process rights under *Doyle*, 426 U.S. 610.

Under K.S.A. 22-3423(1)(c), a trial court may order a mistrial if it finds that prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the State. A motion for a mistrial is reviewed under an abuse of discretion standard, and the party alleging the abuse bears the burden of proving that his or her substantial rights to a fair trial were prejudiced. *State v. Albright,* 283 Kan. 418, 425-26, 153 P.3d 497 (2007).

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Reed,* 282 Kan. 272, 280, 144 P.3d 677 (2006).

*Violation of Motion in Limine*

In evaluating an alleged violation of a motion in limine, a court must determine (1) whether a violation of the order in limine has occurred and (2) whether the facts elicited in violation of the order substantially prejudiced the defendant. *State v. Humphery,* 267 Kan. 45, Syl. ¶ 6, 978 P.2d 264 (1999); *State v. Bowen,* 254 Kan. 618, Syl. ¶ 2, 867 P.2d 1024 (1999). Moreover, the burden is on the defendant to show substantial prejudice. *Humphrey,* 267 Kan. at 61.

The trial court allowed the State to present several witnesses, but ordered the State to tell its witnesses not to mention any previous encounters they may have had with Pruitt involving the investigation of other criminal activities.

At trial, during the testimony of Officer Keiss, the following exchange occurred:

"Q. [Mr. Dupree, Prosecutor] And, Officer, you know the suspect in this case, or the defendant in this case? Are you familiar with him, yes?

"A. His name had came up on another incident —

"MR. DEAN: Objection.

"A. — just prior to this.

"Q. Do you — interrupted.

"THE COURT: Just a minute. Have you discussed all of these matters of my pre-trial rulings with all your witnesses?

"MR. DUPREE: Judge, I discussed those with the witnesses that were — the court advised me to discuss it with."

The trial court excused the jury and discussed the matter with counsel. The court reiterated what it had cautioned the prosecutor to explain to specific witnesses:

"THE COURT: You may all be seated. Okay. Counsel, I instructed you to visit with the witnesses about not putting into the record or trying to put into the record information and I gave you specific witnesses only because that's what I was told the ones that had that information. Obviously, now you were very close, Mr. Dupree, to violating the order in limine by asking this witness a question and *I have to assume you knew the answer that he knew him from other proceedings.* Now, at this point in time I don't think you've crossed the line but if you go any further and that information known to this witness discloses things that is in violation of earlier evidentiary orders you're, basically, asking for a mistrial, is what you're asking for." (Emphasis added.)

Defense counsel moved for a mistrial. Although the prosecutor conceded that his question to Keiss was "probably not the best question to have asked," he argued that he did not violate the trial court's order in limine. The trial court denied the defense's motion for a mistrial. The court then brought the jury back into the courtroom; however, the court did not admonish the jury to disregard Officer Keiss' last response.

Officer Keiss' testimony, "[Pruitt's] name had [come] up on another incident," revealed to the jury that Pruitt had been a suspect in another criminal incident. Moreover, Keiss' testimony would have allowed the jury to infer that Pruitt was no stranger to law enforcement. Although the prosecutor maintained that he did not believe a violation of the court's order in limine had occurred, this contention seems suspect when we consider the questions posed by the prosecutor to Officer Keiss: "And, Officer you know the suspect in this case, or the defendant in this case? Are you familiar

with him, yes?" In asking these two questions, the prosecutor put the answer in Keiss' mouth. In fact, in the second question, the prosecutor answered his own question: "Are you familiar with him, *yes*?" (Emphasis added.) The prosecutor's two questions to Keiss were highly leading and suggestive.

It is apparent that the questions posed by the prosecutor and Keiss' answer to those questions showed a willingness on the part of the State to violate the court's order in limine, especially when we consider the court's previous warning to the prosecutor about such testimony. Was Pruitt substantially prejudiced by Keiss' testimony that Pruitt's name had come up in another incident? Before we can answer this question, we need to consider another incident that occurred during the prosecutor's direct examination of Officer Keiss.

*Doyle Violation*

"Q. [Mr. Dupree, prosecutor] Okay . . .Was Pruitt placed under arrest?
"A. Yes.
"Q. By whom?
"A. I told him he was under arrest and placed him in handcuffs.
"Q. Okay. Did you read him his *Miranda* rights?
"A. I did after we got into my patrol car I read him his rights.
"Q. Did you ask him what had taken place that night?
"A. At that time he told me he didn't want to answer any questions.
"[Mr. Dean, defense counsel] Objection."

Once again, the trial court excused the jury and discussed the matter with counsel. Defense counsel objected to Keiss telling the jury that Pruitt had invoked his constitutional right to remain silent after being told of his *Miranda* rights. The trial judge asked the prosecutor, "[H]ow could you not expect this witness to tell you that the first words out of the defendant's mouth after he had given him his *Miranda* warning was that he wanted to exercise his right given the statement in that [police] report?" In Officer Keiss' police report, he had stated that Pruitt did not want to answer any questions. Indeed the prosecutor could offer no rationale for asking Keiss such a question. Defense counsel renewed his motion for mistrial.

The trial court denied the motion, but gave the jury the following limiting instruction:

"Members of the jury with regard to the last question that was asked of this witness you will disregard in its entirety the response made by the witness. As a further matter I will instruct that whenever an individual is charged with criminal conduct under both the constitutions of the United States and the State of Kansas they are afforded automatically certain constitutional protections including the protections to remain silent or not answer any questions. The exercise of those constitutional right [sic] is a matter that is protected, as I noted, under our constitutions. You are not allowed and may not draw any inferences whatsoever with regard to the guilt or the [innocence] of any part or the credibility of any witness as a result of their exercise of [those] constitutional rights."

The instruction to the jury properly and fairly stated the law as applied to the facts at hand.

In explaining that a defendant may not be impeached with post-*Miranda* silence, our Supreme Court stated:

"Generally, it is constitutionally impermissible for the State to elicit evidence at trial of an accused's post-*Miranda* silence. [Citations omitted.] A *Doyle* violation occurs when the State attempts to impeach a defendant's credibility at trial by arguing or introducing evidence that the defendant did not avail himself or herself of the first opportunity to clear his or her name, instead invoking the constitutional right to remain silent. [Citation omitted.]" *State v. Cosby*, 285 Kan. 230, 244-45, 169 P.3d 1128 (2007).

Here, the prosecutor's direct examination of Officer Keiss about what Pruitt had said after receiving *Miranda* warnings was seemingly gauged to elicit an improper statement about Pruitt's post-*Miranda* silence. As stated earlier, the prosecutor conceded that he had no justification for asking such a question. Under the facts of this case, it was improper for the prosecutor to impeach Pruitt's credibility at trial by introducing evidence of his post-*Miranda* silence.

Although the State implicitly concedes in its brief that it elicited a *Doyle* violation, it argues that the error was harmless. An error of constitutional magnitude is governed by the federal constitutional error rule, which provides that an error is only harmless if it can be declared beyond a reasonable doubt to have had little, if any, likelihood of changing the trial's outcome. *State v. Hebert*, 277 Kan. 61, 96, 82 P.3d 470 (2004).

" 'Where the evidence of guilt is of such direct and overwhelming nature that it can be said that evidence erroneously admitted or excluded in violation of a constitutional or statutory right could not have affected the result of the trial, such admission or exclusion is harmless.' *State v. Sanders,* 258 Kan. 409, 418-19, 904 P.2d 951 (1995)." 277 Kan. at 96.

"To determine whether a trial error is harmless error or prejudicial error, each case must be scrutinized and viewed in the light of the trial record as a whole, not on each isolated incident viewed by itself. [Citation omitted.]" *State v. Hernandez,* 284 Kan. 74, 95, 159 P.3d 950 (2007).

Here, the evidence against Pruitt was not overwhelming. For instance, the jury found Pruitt not guilty of the battery charge. This case depended on the credibility of the witnesses. Previously, we determined that the prosecutor's elicitation of testimony that police knew Pruitt because of "another incident" was a violation of the order in limine. Moreover, the trial court did not instruct the jury to disregard Keiss' testimony. In addition, the violation seemed to be intentional and Keiss' testimony was prejudicial. The prosecutor followed the order in limine violation with a *Doyle* violation. Although the trial court admonished the jury not to consider Pruitt's post-*Miranda* silence in its deliberation, the damage had been done in the credibility contest between Surmeier and Pruitt. The *Doyle* violation was apparently intentional, and Keiss' testimony was very prejudicial. Moreover, there is no telling what effect Keiss' testimony (in violating the order in limine and the post-*Miranda* silence rule) had in a case primarily based on credibility. As a result, we determine that Pruitt was substantially prejudiced by Keiss' testimony.

*Did the Trial Court Err When it Gave the Allen Instruction to the Jury?*

Pruitt argues that the trial court committed reversible error when it gave the *Allen* jury instruction, because it contained prejudicial language and contradicted the purpose of another jury instruction given to the jury. Defense counsel objected to the use of this instruction.

When a defendant objects to instructions, our court is required to consider the instructions as a whole and not isolate any one instruction. "Even if erroneous in some way, instructions are not reversible error if they properly and fairly state the law as applied to the facts of the case and could not have reasonably misled the jury." *State v. McKissack*, 283 Kan. 721, 732, 156 P.3d 1249 (2007) (citing *State v. Edgar*, 281 Kan. 47, 54, 127 P.3d 1016 [2006]).

The jury instruction in question is as follows:

"Like all cases, this is an important case. If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the state to decide whether to resubmit the undecided charge(s) to a different jury at a later time. Another trial would be a burden on both sides.

"This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.

"This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. If at all possible, you should resolve any differences and come to a common conclusion.

"You may be as leisurely in your deliberations as the occasion may require and take all the time you feel necessary."

Pruitt contends that the language "[a]nother trial would be a burden on both sides" was unduly prejudicial because it diminished the importance of his constitutional rights and because it deprived him of a fair trial since it misled the jury. In addition, he argues that the *Allen* instruction is in direct conflict with Instruction 7, which says, "Your only concern in this case is determining whether the defendant is guilty or not guilty. The disposition of the case thereafter is a matter for determination by the Court," because the *Allen* instruction allows the jury to consider matters after the trial is over.

We are guided in our inquiry by a recent holding of our Supreme Court. Under the clearly erroneous standard, our Supreme Court determined that the use of "the language '[a]nother trial would be a burden on both sides' in PIK Crim. 3d 68.12 is error." *State v. Salts*, 288 Kan. 263, Syl. ¶ 2, 200 P.3d 464 (2009).

Our Supreme Court stated, and Pruitt agrees, that

"a second trial may be burdensome to some but not all on either side of a criminal case. Moreover, the language is confusing. It sends conflicting signals when read alongside Instruction 11 [Instruction 7 in this case] or a similar instruction that tells jurors not to concern themselves with what happens after they arrive at a verdict." 288 Kan. at 266.

Nevertheless, our Supreme Court held that, though the instruction was error, it was not reversible error under a clearly erroneous standard of review. 288 Kan. at 266-67.

Here, Pruitt, however, objected to the giving of the deadlocked jury instruction. As a result, the clearly erroneous standard applied in *Salts* is inapplicable to this case. We must consider whether the *Allen* instruction properly and fairly stated the law as applied to the facts of the case and whether the instruction could have misled the jury. Because the *Allen* instruction was misleading and it contradicted another jury instruction, Pruitt's conviction must be reversed. See *State v. Page*, 41 Kan. App. 2d 584, 203 P.3d 1277, 1279 (2009). ("Given the fact our Supreme Court has held the deadlocked jury instruction misleading and the real possibility the jury in this case was at least influenced by the erroneous language in the jury instruction, this defendant's convictions must be reversed.").

### Alternative Ground

In the alternative, this case has to be reversed based on the cumulative effect of errors. In addition to the three errors previously discussed, we note that one other error occurred during the trial of this case.

" 'Cumulative trial errors, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found under the cumulative effect rule if the evidence is overwhelming against a defendant. [Citation omitted.]' " *State v. Nguyen*, 285 Kan. 418, 437, 172 P.3d 1165 (2007).

Pruitt argues that the trial court committed reversible error and denied him his constitutional right to present a full and complete defense when it excluded two photographs of his injuries received on the night of the incident.

The trial court denied the admission of the photographs based on a lack of foundation laid by Pruitt. The photographer did not testify as to the foundation of the photographs. Pruitt testified at trial that the photographs correctly represented his injuries on the night of the incident and that the photographs were taken at the jail the following day, and he obviously was present when they were taken. The court indicated that because the photographs were not identified by the person who took them, they were inadmissible. Nevertheless, under Kansas law, the person who takes the photograph need not be the person who identifies the photograph in order for a proper foundation to be laid. *State v. Diaz & Altemay*, 232 Kan. 307, 315-16, 654 P.2d 425 (1982); see also *Landrum v. Taylor*, 217 Kan. 113, 120, 535 P.2d 406 (1975) (plaintiff authenticated photographs taken in her presence by her counsel by identifying the date they were taken and stating that they correctly represented the scenes depicted; plaintiff's testimony was found sufficient to allow the trial court to admit the photographs into evidence). As a result, the trial court abused its discretion in denying the admission of the photographs based on lack of foundation.

Our review is a two-step process. Having first found that evidence has been improperly excluded, we must then determine whether to apply the harmless error rule of review or the federal constitutional error rule to the erroneous exclusion of that evidence. *State v. Leitner*, 272 Kan. 398, Syl. ¶ 6, 34 P.3d 42 (2001). Pruitt has alleged an error of constitutional magnitude, so the constitutional harmless error rule applies. Constitutional harmless error analysis requires us to declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the result of the trial. *State v. Henderson*, 284 Kan. 267, 294, 160 P.3d 776 (2007).

The State concedes that the trial court erred in denying the admission of the photographs. Nevertheless, the State argues that the error was harmless because Pruitt was able to present his theory of defense by testifying. In addition, the State argues that Pruitt could have subpoenaed witnesses who saw the injuries on his neck on the night of the incident. The State asserts that the trial court's decision did not prevent Pruitt from presenting his theory of de-

fense, but the court's decision merely changed the manner in which the theory could be presented. We disagree.

We are reminded of an old proverb: "One picture is worth ten thousand words." Fred R. Shapiro, ed., The Yale Book of Quotations 528 (Yale University Press 2006). Although Pruitt may have had other avenues to show his injuries, photographs are excellent substantive evidence. For example, a juror may think that he or she has formed an accurate mental picture based on the testimony of witnesses. Yet, each juror may have a different mental picture in mind. Moreover, some jurors may have a mental picture in mind that is totally wrong. Nevertheless, an accurate picture can be created in a juror's mind when he or she sees a picture of the injury or the object in question.

Pruitt argues that the error was not harmless because, ultimately, this case was a credibility contest between Pruitt and Surmeier. Surmeier testified that he grabbed hold of Pruitt and that he placed him in an "arm lock." On the other hand, Pruitt's testimony directly contradicted the testimony of Surmeier. Pruitt testified that Surmeier tackled and choked him from behind and that he freed himself because he could not breath. The photographs depicting Pruitt's neck injuries, possibly resulting from the alleged choke hold, would have tended to corroborate Pruitt's testimony. Moreover, the photographs would have impeached Surmeier's testimony because the injuries in the photographs were inconsistent with how Surmeier testified that he had held Pruitt. As a result, we determine that Pruitt was prejudiced when the jury was not allowed to see the photographs.

In this case, there were trial errors that, if standing alone, would not have required a reversal of this case. Nevertheless, when all the errors are considered, we determine that the cumulative effect of the errors substantially prejudiced Pruitt and denied him a fair trial.

II. *Did the Trial Court Err in Sentencing Pruitt Based on a Criminal History That Was Not Proven to a Jury Beyond a Reasonable Doubt?*

Pruitt contends that the trial court erred when it used his criminal history to enhance his sentence without having the criminal history proven to a jury beyond a reasonable doubt.

*State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), controls this issue. Absent some indication that our Supreme Court is departing from its position in *Ivory*, this court is bound thereby. *State v. Merrills*, 37 Kan. App. 2d 81, 83, 149 P.3d 869, *rev. denied* 284 Kan. 949 (2007). Our Supreme Court continues to apply its decision in *Ivory* without divergence. See, *e.g., State v. Farmer*, 285 Kan. 541, 555, 175 P.3d 221 (2008). Similarly, the United States Supreme Court recently reaffirmed that prior convictions need not be proven to a jury beyond a reasonable doubt. See *James v. United States*, 550 U.S. 192, 213-14 n.8, 167 L. Ed. 2d 532, 127 S. Ct. 1586 (2007). This court is duty bound to follow *Ivory*. As a result, Pruitt's argument fails.

Reversed and remanded for a new trial.

MCANANY, J., concurring in part and dissenting in part: I concur with the majority that this case must be reversed and remanded. Because Pruitt objected to the *Allen* instruction, *State v. Salts*, 288 Kan. 263, Syl. ¶ 2, 200 P.3d 464 (2009), requires that we do so. However, I would not reverse based upon the other claimed trial errors or based upon a cumulative error analysis.

The question to and answer of Officer Keiss about prior knowledge of Pruitt violated the order in limine but, in my view, did not "reveal to the jury that Pruitt had been a suspect in another criminal incident" as the majority finds. Persons other than criminal suspects have contact with the police. Pruitt may have been a citizen reporting a crime, a witness, or a victim of crime himself. He may have had contact with the police in some other capacity. The question and Keiss' answer did not identify Pruitt as a past criminal suspect. I would not find that this testimony affected the outcome of the trial.

The questioning of Keiss about Pruitt's post-*Miranda* silence is clearly a *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976), violation. But given the court's curative instruction, I would not find that it affected the results of the trial. To the contrary, it apparently did not, given the jury's rejection of Keiss' description of his struggle with Pruitt. The jury acquitted Pruitt of battery.

The rejection of Pruitt's proffered photos clearly was erroneous. However, it did not prejudice Pruitt. It did not affect the outcome of the trial. The photos demonstrated Pruitt's injuries. Pruitt claimed he struggled against Keiss when Keiss put him in a headlock and cut off his airway. The photos confirmed this. Though the jurors did not have the photos, they acquitted Pruitt of the claimed battery of Keiss during the struggle.

The mere accumulation of otherwise nonprejudicial errors does not warrant reversal under a cumulative error analysis unless, collectively, they denied the defendant a fair trial. Pruitt fails to convince me that these errors rise to that level.