(216 P.3d 707)
No. 100,129

STATE OF KANSAS, *Appellee*, v. BRETODD E. WILLIAMS,
*Appellant*.

Opinion filed September 25, 2009.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON AND LEBEN, JJ.

MCANANY, J.: Bretodd Williams was convicted in September 2005 of aggravated assault, aggravated robbery, and criminal pos-

session of a firearm. He was granted probation, which was to be served at the community corrections residential facility. On May 28, 2006, Williams was fired from his job. Williams called his aunt to ask her for a ride back to the residential facility. She told him that she could not help him because her car had a flat-tire. Williams called the residential facility and asked the staff for permission to help his aunt with the flat tire rather than returning directly to the facility. His request was denied, but Williams went anyway. Once the tire was changed, Williams' aunt drove him to the residential facility, where Williams explained the situation to the facility's supervisor. The supervisor informed Williams that he would be sent back to the county jail for the violation. Rather than return to jail, Williams fled to Texas. Williams was charged, tried, and convicted of aggravated escape from custody.

*Sympathy Instruction*

During the jury instruction conference at the close of the evidence, the State requested the following instruction consistent with PIK Criminal 3d 51.07: " 'You must consider this case without favoritism or sympathy for or against either party. Neither sympathy nor prejudice should influence you.' " The State argued that while the instruction is often unnecessary, in this case defendant conceded in his own testimony that he committed the crime and rested his defense on a plea for sympathy. The court allowed the no-sympathy instruction because Williams

"has in significant part admitted to the elements of the crime, but he's in essence asking the jury to excuse him, because in his mind he had a good reason for doing what he did. . . . I do think that that is in essence an appeal for sympathy from the jury."

On appeal we examine the jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury. See *State v. McKissack*, 283 Kan. 721, 732, 156 P.3d 1249 (2007).

Williams reminds us of a number of facts he testified to at trial: (1) He committed his underlying felony, an armed robbery at a liquor store, to help his mother who needed money; (2) he had

ongoing problems with his Intensive Supervision Officer (ISO), who was setting him up to fail; (3) he had difficulty adjusting to his ISO's demands; and (4) he was late returning to the residence facility because he had been helping his aunt with the flat tire. He argues on appeal: "The effect of the sympathy instruction in this case was that it essentially nullified not only most of Mr. Williams' testimony, but in fact undermined his theory of defense."

The appropriateness of a sympathy instruction was first considered in *State v. Sully*, 219 Kan. 222, 547 P.2d 344 (1976). In *Sully*, the defendant claimed the trial court should have given a precautionary instruction to the jury regarding consideration of what he characterized as gruesome photographs of the deceased which were admitted into evidence. The court stated:

> "We have no precise precedent on the subject. Our state committee on pattern jury instructions points out that a cautionary type instruction on consideration of the case without favoritism, sympathy, or prejudice for or against a party is objectionable because it tells the jury what not to do rather than what to do and it recommends that none be given unless there are very unusual circumstances (PIK, Criminal, 51.07, p. 41). We think these views reflect the *better* practice as to precautionary instructions but hasten to add that *the giving of such an instruction would not constitute error*." (Emphasis added.) 219 Kan. at 226.

Lost in the mists of time is any further explanation as to why the PIK committee found this practice so objectionable, particularly when other PIK instructions routinely given in criminal cases tell the jury what not to do. Trial courts routinely instruct juries not to discuss the evidence before deliberations begin and not to rely on outside sources of information, as cautioned against in PIK Criminal 3d 51.01. In PIK Criminal 3d 51.01-A, jurors are cautioned against certain conduct in the course of taking notes during the trial. PIK Criminal 3d 51.04 tells the jury to disregard testimony or exhibits not admitted. PIK Criminal 3d 51.06 tells the jury not to consider statements of counsel which are not supported by the evidence. PIK Criminal 3d 51.10-A tells the jury not to consider the disposition of the case in determining whether the defendant is guilty or not guilty. PIK Criminal 3d 52.07 tells the jury not to consider evidence limited to one defendant in determining the guilt of another defendant. PIK Criminal 3d 52.13 tells the jury

not to consider a defendant's failure to testify. PIK Criminal 3d 56.00-F tells the jury in a capital murder case not to consider the number of aggravating or mitigating circumstances in determining whether aggravating circumstances outweigh any mitigating circumstances. See also PIK Criminal 3d 56.01-E.

We do not find it inherently pernicious to tell jurors not to do things they should not do.

About 1 month following its opinion in *Sully*, the court rejected a claim that the defendant was prejudiced by the temporary relocation of his trial to the victim's home in order to take her testimony because she suffered from an advance stage of lung cancer and could not come to court. The Supreme Court found that the trial court's giving of the PIK Criminal 3d 51.07 instruction on sympathy "adequately covered the subject." *State v. Rhone*, 219 Kan. 542, 545, 548 P.2d 752 (1976).

We find only two Kansas cases in which an appellate court found that giving an instruction against sympathy constituted reversible error. Neither applies.

The first case is *State v. Maggard*, 26 Kan. App. 2d 888, 995 P.2d 916, *rev. denied* 269 Kan. 938 (2000), a case of attempted rape by a defendant with diminished mental capacity. In *Maggard*, the court refused to instruct on the defendant's diminished capacity but gave the PIK Criminal 3d 51.07 no-sympathy instruction. On appeal, the court reversed, finding that the no-sympathy instruction "combined with the trial court's refusal to instruct on diminished capacity . . . [removed] from the jury's consideration defendant's capacity to form the intent necessary to commit the crime." 26 Kan. App. 2d at 892-93. In Williams' case, unlike in *Maggard*, the no-sympathy instruction had no potential impact on proof of the elements of the crime, all of which Williams admitted in his own trial testimony.

The second case is *State v. Harmon*, 254 Kan. 87, 865 P.2d 1011 (1993). In *Harmon*, the court set aside the defendant's "hard 40" sentence in a first-degree murder case because of potential juror confusion in the sentencing phase of the trial due to the conflict between the instruction that sympathy should not enter into the jurors' deliberations and the instruction that mitigating circum-

stances " 'are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability.' " 254 Kan. at 97-98. *Harmon* presents unique circumstances that are not found in Williams' case. In Williams' case there was no potential for jury confusion arising from use of the no-sympathy instruction.

Williams argues that giving the no-sympathy instruction nullified the effect of his testimony and undermined his defense. What defense? In order to prove aggravated escape from custody, the State was required to prove that on the date specified and in Sedgwick County (1) Williams was being held in custody on a felony conviction, and (2) he intentionally departed from custody at the community correction residential facility without lawful authority. In his trial testimony Williams conceded he was in custody for a felony aggravated robbery conviction at the time he eloped. He admitted he left the community corrections residential facility intentionally and without permission and went to Arlington, Texas. His defense seems to be: sure, I did it, but I'm a nice guy and I was just trying to help out my family; and besides, my ISO is a jerk and the rules at the residential facility are unreasonable. During closing arguments, Williams' counsel expanded on this theory when, rather than arguing that Williams did not commit the crime, he argued:

"We also heard from Mr. Williams that he had to break the rules to get a shirt from another resident. That's a rule violation there because he couldn't have access to a shirt. His family was out of town, the other option for him to get the shirt would be a family member bringing it in. All of his family was in Texas.

"There were contradictions in the way the residential facility was portrayed. . . . I just want to say that Mr. Williams is a good young man, I've come to know him in the jail, I've talked to him. . . . I'm not making excuses for my client why he robbed a store, but you heard him say why, it was for his mother, who was indigent, and his younger siblings, he wanted money for them. A 17-year-old kid, okay.

. . . .

". . . [H]e took it upon himself to change his aunt's tire . . . . This is something that I think that any man can identify with . . . an old woman with two children, in the winter time, at night, with a flat tire . . . . In downtown Wichita, you know, it's not the best place to be at night sometimes . . . . How can you expect a woman to carry the tire to the gas station? . . . I want you all to know that I believe that Mr. Williams is a good man."

These statements cannot be characterized as anything other than a plea for sympathy. In essence, Williams claims the court should have legitimized this plea for sympathy by refusing to inform the jurors that sympathy should not enter into their deliberations.

The jurors selected to sit on Williams' jury were sworn to try the case once the jury was empaneled. K.S.A. 22-3412(b), (c). Traditionally, jurors swear by oath or affirmation to try the case conscientiously and return a verdict according to the law and the evidence, the same oath or affirmation made by jurors in civil cases. See K.S.A. 60-247(d). The court's first instruction to the jury at the close of the evidence instructed: "It is my duty to instruct you in the law that applies to this case and it is your duty to consider and follow all of these instructions. You must decide the case by applying these instructions to the facts as you find them." Williams' defense strategy (which the court's no-sympathy instruction frustrated) was to encourage the jurors to ignore the facts, ignore the law, and ignore their oaths as jurors. Under these circumstances, the court properly instructed the jurors that sympathy should not enter into their deliberations.

*Apprendi*

Williams argues that the State failed to prove his criminal history beyond a reasonable doubt before a jury, in violation of his rights as expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). He asks that we set aside his sentence and remand his case for resentencing. This issue was resolved contrary to Williams' claim in *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002). We are bound to follow *Ivory*. See *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005). Williams' sentencing claim is without merit.

Affirmed.