(242 P.3d 196)
No. 100,604

STATE OF KANSAS, *Appellee*, v. CLIFFORD BAUGHMAN, *Appellant*.

Opin-
ion filed May 28, 2010.

*Rick Kittel*, of Kansas Appellate Defender Office, of Topeka, for appellant.

*Sherri Schuck*, county attorney, and *Steve Six*, attorney general, for appellee.

Before MARQUARDT, P.J., BUSER, J., and LARSON, S.J.

LARSON, J.: This is Clifford Baughman's direct appeal from his conviction in a jury trial of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(1).

Baughman alleges on appeal that the district court erred (1) in giving the "deadlocked" jury instruction over his specific objection; (2) in failing to require an election or giving an instruction in a multiple acts situation; (3) by excluding evidence of the victim's previous sexual history for the purpose of impeachment; and (4) by refusing to remove Baughman's appointed counsel on the morning of the jury trial.

We reverse and remand for further proceedings because the district court erred in giving, over Baughman's specific objection, a deadlocked jury instruction which had been disapproved by our appellate court in *State v. Salts*, 288 Kan. 263, 200 P.3d 464 (2009), *State v. Scott-Herring*, 284 Kan. 172, 180-81, 159 P.3d 1028 (2007), *State v. Turner*, 34 Kan. App. 2d 131, 132-36, 115 P.3d 776 (2005), and other cases.

We will briefly set forth trial testimony in commenting on other issues, but such a discussion is not necessary to resolve the dispositive issue in this appeal.

The *Allen v. United States*, 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154 (1896), "deadlocked jury instruction" was given in this case, along with other jury instructions, and reads as follows:

"No. 14

"This is an important case. If you should fail to reach a decision, the case is left open and undecided. Like all cases, it must be decided sometime. Another trial would be a heavy burden on both sides.

"There is no reason to believe that the case can be tried again any better or more exhaustively than it has been. There is no reason to believe that more evidence or clearer evidence would be produced on behalf of either side.

"Also, there is no reason to believe that the case would ever be submitted to 12 people more intelligent or more impartial or more reasonable than you. Any future jury must be selected in the same manner that you were.

"This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely

because of the opinion of other jurors or because of the importance of arriving at a decision.

"This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. If at all possible, you should resolve any differences and come to a common conclusion. You may be as leisurely in your deliberations as the occasion may require and take all the time you feel necessary."

Because Baughman objected to instruction No. 14, the instructions are to be considered by an appellate court as a whole and not isolate any one instruction. Even if erroneous in some way, instructions are not reversible error if they properly and fairly state the law as applied to the facts of the case and could not have reasonably misled the jury. *State v. McKissack*, 283 Kan. 721, 732, 156 P.3d 1249 (2007).

Baughman, in a Supreme Court Rule 6.09 letter (2009 Kan. Ct. R. Annot. 47) following oral argument, suggests that this standard has been stated another way in a recent case, *State v. Williams*, 42 Kan. App. 2d 725, Syl. ¶ 1, 216 P.3d 707 (2009): "An appellate court examines jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury." We will follow the standard of review most recently set forth in a Supreme Court opinion, *State v. Appleby*, 289 Kan. 1017, 1059, 221 P.3d 525 (2009), which states:

"When a party has objected to an instruction at trial, the instruction will be examined on appeal to determine if it properly and fairly states the law as applied to the facts of the case and could not have reasonably misled the jury. In making this determination an appellate court is required to consider the instructions as a whole and not isolate any one instruction. [Citations omitted.]"

In his appeal, Baughman argues the instruction is unduly coercive, misleading, confusing, and legally infirm because it allows the jury to consider matters outside the evidence produced at trial and improperly appeals to the financial interests of jurors. He further argues instruction No. 14 is in direct conflict with instruction No. 11. Specific language in instruction No. 14 has been disapproved in prior appellate opinions, and the instruction given follows exactly

the pre-2005 version of PIK Crim. 3d 68.12, which our Supreme Court in *State v. Scott-Herring*, 284 Kan. at 181, specifically directed that trial judges should discontinue using.

The State recognizes the holdings of the several cases which Baughman cites but argues they do not require reversal in our case. The State points out that while "like all cases, it must be decided sometime" is an inaccurate statement of law, *State v. Scott-Herring* did not require reversal and under the standard of review proper and fair instructions were required rather than "technically perfect instructions." The State further points to the fact there was no objection in the *State v. Salts* case, which required a clearly erroneous standard of review, and the court concluded there was no reversible error because there was no real possibility the jury would have reached a different verdict absent the error. 288 Kan. at 266-67.

The State distinguishes the recent case of *State v. Page*, 41 Kan. App. 2d 584, 203 P.3d 1277 (2009), where giving the deadlocked jury instruction was objected to and deemed to be reversible error because the jury had informed the court it was deadlocked on count II but continued deliberations the following day and eventually found Page guilty. The State argues Baughman's case is different as there were no deadlock or hung jury announcements and, in fact, the jury came back with a split verdict, finding Baughman not guilty on count I and guilty on count II.

The problems with the language of PIK Crim. 3d 68.12 was first set forth in Judge Malone's opinion in *State v. Turner* where the "Like all cases, it must be decided sometime" language was held to be an inaccurate statement of law because the case might not be retried and could be dismissed without prejudice and never decided. 34 Kan. App. 2d at 134. The *Turner* opinion stated there was nothing to support a pressured verdict and the jury could not reasonably have been misled by the instructions. 34 Kan. App. 2d at 136.

This same language was objected to in *State v. Scott-Herring* but not found to be sufficiently erroneous to require reversal of a first-degree murder conviction. Justice Rosen pointed out in *Scott-Herring* that appellant's argument had recently been rejected in *State*

*v. Anthony*, 282 Kan. 201, 215-16, 145 P.3d 1 (2006), where a clearly erroneous standard was applied because the defendant had not objected to the instruction. The *Scott-Herring* opinion noted that much of the concern about the instruction had been remedied by the PIK Committee, and the court stated that the current version was a more accurate statement of a jury's responsibilities. The *Scott-Herring* opinion quoted the modified instruction as it now reads:

"Like all cases, this is an important case. If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the state to decide whether to resubmit the undecided charge(s) to a different jury at a later time.

"This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.

"This does not mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. You should treat the matter seriously and keep an open mind. If at all possible, you should resolve any differences and come to a common conclusion.

"You may be as leisurely in your deliberations as the occasion may require and take all the time you feel necessary. PIK Crim. 3d 68.12 (2005 Supp.)." 284 Kan. at 181.

As we previously noted, the *Scott-Herring* opinion further directs trial judges to discontinue using the pre-2005 version of PIK Crim. 3d 68.12. It is factored in our decision to reverse the trial court that this direction was *not* followed in our case and the instruction given, over objection, was in the precise language of the pre-2005 version of PIK Crim. 3d 68.12.

*State v. Salts* was decided subsequent to the trial in our case. The unobjected-to *Allen*-type instruction there included the "another trial would be a burden on both sides" language. Also given in the *Salts* case and in ours was instruction No. 11, which states: "Your only concern in this case is determining if the defendant is guilty or not guilty. The disposition of the case thereafter is a matter for determination by the Court."

In discussing the challenged language, Justice Beier said:

"Salts' argument that the challenged language is misleading and inaccurate has merit. Contrary to this language, a second trial may be burdensome to some but not all on either side of a criminal case. Moreover, the language is confusing. It sends conflicting signals when read alongside Instruction 11 or a similar instruction that tells jurors not to concern themselves with what happens after they arrive at a verdict.

"We therefore hold that including the language '[a]nother trial would be a burden on both sides' in PIK Crim. 3d 68.12 is error." 288 Kan. at 266.

Using a clearly erroneous standard, the *Salts* court did not reverse, being "firmly convinced that there is no real possibility the jury would have rendered a different verdict if the error had not occurred." 288 Kan. at 267.

*State v. Page* was decided by the Court of Appeals shortly after the *Salts* opinion was handed down. In the *Page* opinion by Chief Judge Rulon, the holding of *Salts* was discussed. It was recognized that the "deadlocked" jury instruction had been objected to by the defendant and the *Page* opinion concluded:

"According to our Supreme Court, telling a jury that ' "[a]nother trial would be a burden on both sides" ' is misleading, inaccurate, and confusing. [288 Kan. at 265-66]. Moreover, in this case the jury actually informed the district court a hung jury was a real possibility. In fact, the jury indicated it was deadlocked as to count II. The district court responded by recessing for the evening. When the jury returned the next day, the jury requested the court read back certain testimony. The jury eventually convicted the defendant of two counts of rape. Given the fact our Supreme Court has held the deadlocked jury instruction misleading and the real possibility the jury in this case was at least influenced by the erroneous language in the jury instruction, this defendant's convictions must be reversed." 41 Kan. App. 2d at 586-87.

It appears in *Page* that our court did, in part, rely on the jury's statement of possible deadlock in reaching its decision. However, *Page* does not say that signs of possible jury deadlock are necessary for reversal, only that it was a factor.

Our next Court of Appeals decision, *State v. Pruitt*, 42 Kan. App. 2d 166, 211 P.3d 166 (2009), reversed a conviction as the result of the giving of an improper *Allen* instruction without any discussion of whether the jury might have been deadlocked or evidence that it was. The *Pruitt* opinion noted that the *Allen* instruction conflicted with the instruction which stated: "Your only concern in this

case is determining whether the defendant is guilty or not guilty. The disposition of the case thereafter is a matter for determination by the Court." 42 Kan. App. 2d at 174. *Pruitt* discussed the *Salts* decision and concluded:

"Here, Pruitt, however, objected to the giving of the deadlocked jury instruction. As a result, the clearly erroneous standard applied in *Salts* is inapplicable to this case. We must consider whether the *Allen* instruction properly and fairly stated the law as applied to the facts of the case and whether the instruction could have misled the jury. Because the *Allen* instruction was misleading and it contradicted another jury instruction, Pruitt's conviction must be reversed. See *State v. Page*, 41 Kan. App. 2d 584, 586-87, 203 P.3d 1277 (2009). ('Given the fact our Supreme Court has held the deadlocked jury instruction misleading and the real possibility the jury in this case was at least influenced by the erroneous language in the jury instruction, this defendant's convictions must be reversed.')." 42 Kan. App. 2d at 175.

It should also be noted that the *Pruitt* court reversed the conviction on an alternate ground of cumulative error, but Judge McAnany concurred in part and dissented in part, stating:

"I concur with the majority that this case must be reversed and remanded. Because Pruitt objected to the *Allen* instruction, *State v. Salts*, 288 Kan. 263, Syl. ¶ 2, 200 P.3d 464 (2009), requires that we do so. However, I would not reverse based upon the other claimed trial errors or based upon a cumulative error analysis." 42 Kan. App. 2d at 178.

It is thus clear that Judge McAnany would have reversed solely as the result of the objected-to *Allen* instruction and further that the panel did not believe any confusion or thought of deadlock on the part of the jury was necessary for reversal to be required.

There are also two more recent Court of Appeals cases, both of which were not published, which turned on the *Allen* issue. In *State v. Rivera*, No. 100,848, unpublished opinion filed January 29, 2010, a DUI conviction was reversed where the "deadlock" jury instruction was given prior to opening statements. As the trial court reached the "another trial would be a heavy burden language," Rivera immediately objected, stating: "Judge, I would request that you not give them the [*Allen*-type] charge before they start deliberating because I don't think that's appropriate before, I mean, you're basically giving them an [*Allen*-type] charge." Slip op. at 11-

12. The trial court overruled the objection and read the instruction again.

After retiring for deliberations, the jury asked several questions and eventually advised the court, "We are at an impasse." The judge asked the jury if they had additional time if they could reach a verdict, and when a juror responded affirmatively, the jury was directed to continue to deliberate and eventually returned a guilty verdict.

The *Rivera* opinion commented on *Salts*, *Page*, the conflicting language, and the effect on a deadlocked jury, and reversed the conviction and remanded for a new trial because the deadlocked jury instruction had been disapproved in *Salts*. Slip op. at 16-17.

The most recent decision on this issue is *State v. Starbird*, No. 101,559, unpublished opinion filed February 26, 2010, where the deadlocked jury instruction was given prior to deliberations but was not objected to. The *Starbird* panel found this did not constitute reversible error under a clearly erroneous standard. After discussing *Salts* and *Page*, the *Starbird* court held there was never any indication the jury was deadlocked or impacted by the instruction and following *Salts*, *Starbird* was unable to establish the giving of the instruction was clearly erroneous.

In reaching our conclusion, we begin with the fact the instruction as given and objected to was in clear violation of the express direction by our Supreme Court in the 2007 opinion in *Scott-Herring* to discontinue using the pre-2005 version of PIK Crim. 3d 68.12. See 284 Kan. at 181. The instruction given was subject to all of the negatives that have been set forth in the cases we have cited. *Scott-Herring* does not set forth the consequences of failure to follow its direction but an obvious result would be reversal of the offending case.

However, the question which must be answered where there is a clear objection to an erroneous instruction is whether it "could not have reasonably misled the jury." We hold it is not necessary to have a jury report that it is at an impasse in order to reach the decision that an admittedly erroneous instruction has misled a jury. The fact there was a split verdict in our case does not show the

lack of confusion as the State argues, it could just as easily be evidence of confusion.

The instruction given in our case was specifically determined by our Supreme Court in *Salts* to be misleading, inaccurate, and erroneous. See 288 Kan. at 266. The clear reasoning, language, and result in *Pruitt* where a reversal was ordered without any discussion of the interaction of the jury with the court is persuasive.

We hold the instruction as given, considered in its entirety, could have reasonably misled the jury. Consequently, we reverse the defendant's convictions and remand for further proceedings.

The future course of this case is not within our control. But, if it is tried again and the evidence presented is substantially the same as in the first trial, we offer limited comments as to the other issues raised on appeal.

The testimony as to the interaction between the defendant and victim on July 15, 2007, showed a brief sexual encounter which involved both digital and penile penetration of the victim. We do not believe this was a multiple acts situation as there appeared to be a limited lapse of time between the two penetrations, and so a unanimity instruction was not required.

We point the parties to *State v. Voyles*, 284 Kan. 239, 244-56, 160 P.3d 794 (2007), for a comprehensive discussion of this issue. We also note that Baughman's claim of multiplicity could be addressed on retrial by the State, informing the jury of which act to rely on or having the trial court instruct the jury to agree on a specific criminal act.

We will not repeat the testimony but the trial court was correct in refusing to allow the defense to cross-examine the victim as to prior sexual conduct "as a matter of credibility" as such would have been in violation of the rape shield motion in limine that had been filed.

Finally, there is no way to know who will represent Baughman in the future and we make no comment on the alleged error of failing to remove his appointed counsel on the morning of trial.

Reversed and remanded for further proceedings.

\* \* \*

MARQUARDT, J., concurring and dissenting: I concur that this is not a multiple acts case. I respectfully dissent from the majority's holding that giving the *Allen* instruction was reversible error. Even though it was error, I believe it was harmless error because of the overwhelming evidence against Baughman and this case should be affirmed.

Baughman, a 23-year old, was charged with two counts of aggravated indecent liberties with a child and one count of sexual exploitation of a child. Count I was aggravated indecent liberties with a child in June 2007. Count II was aggravated indecent liberties with a child in July 2007. The victim was a 15-year old girl, D.E.K. The sexual exploitation of a child charge was dismissed. Baughman's trial lasted 2 days.

*D.E.K.'s Testimony*

D.E.K. testified that she met Baughman through a friend, in March 2007. In April they began "talk[ing] on the computer," using Facebook, and she told him she was 15.

The first time D.E.K. and Baughman "hung out alone" was in June 2007. D.E.K. was babysitting for an entire weekend and was using her cell phone to text back and forth with Baughman. Late Saturday night or early Sunday morning, they arranged to meet behind the Gas 4 Less station while her friends watched the children she was supposed to be babysitting. She told her friends that she was going to meet Baughman.

When D.E.K. met Baughman, they hugged and kissed. She said, "After awhile we were talking and he fingered me," which meant that he unbuttoned her pants, put his hand down her pants, and put his finger in her vagina. They stayed behind the Gas 4 Less for 2 or 3 hours.

The next time Baughman and D.E.K. were alone together was in July 2007. D.E.K. was hanging out with C.S., L.B., and K.D. on Saturday and they went to a motorcycle rally. All of them were under 18 years of age.

That evening, D.E.K. and Baughman were texting each other and agreed to meet again behind the Gas 4 Less. When Baughman and D.E.K. met, they hugged and talked. They sat down with Baughman seated behind her. At some point he had his hand on

her crotch, started putting his fingers in her shorts, and then he "fingered" her. It was the same type of "fingering" he had done in June.

Baughman told her to get up and she did. He then told her to lie down. She saw him unbuckling his pants and said, " 'No, not yet,' and he said, 'Don't worry, I'm not going to stick it in you,' and he did." She eventually took off her shorts and her underwear. He never took his pants off, just took his penis out. They went over by an old truck and he wanted her to "sit and do it" on the edge of the truck. But that "didn't work." Then he told her to turn around, and she "thought that he was going to do something else but he didn't."

They "finally did it lying down." She said he was "gentle." When it hurt, she told him to stop, so he did. Then he "went at it again" and "once it started hurting [she] told him to stop." Then "after the pain went away he kept going." The prosecutor asked D.E.K. what she meant when she said that "he put it in you." D.E.K. said: "He put his penis in my vagina." The prosecutor asked how long the two had "sexual intercourse" and D.E.K. said 15 or 20 minutes.

Because Baughman was not wearing a condom, D.E.K. was concerned she would get pregnant. Baughman said she would not because she "didn't let him finish." He told her he did not ejaculate. After they had sexual intercourse D.E.K. said she stayed about 10 minutes and then walked back to C.S.'s house.

D.E.K. did not tell her friends immediately what had happened but later she told K.D., "because it was my first time and it hurt and so they noticed a little. She thought something happened." D.E.K. said K.D. "kind of figured that I was walking weird," so D.E.K. told her she was in pain and she had had sex with Baughman.

K.D. testified: "She [D.E.K.] said that behind Gas 4 Less her and Clifford had sex and she had lost her virginity to him." Monday night K.D. told D.E.K.'s best friend, who threatened to tell D.E.K.'s parents what happened if D.E.K. did not tell them herself. So D.E.K. told her parents about it on Tuesday.

### Christine Hazlett-Allen's Testimony

D.E.K. was examined by Christine Hazlett-Allen, a sexual assault nurse examiner, on July 18. Allen collected evidence, including the underwear that D.E.K. had been wearing at the time of the incident. The collected evidence was sent to the KBI; however, no biological evidence was found on the clothing.

Allen also examined D.E.K.'s vaginal area using a colposcope to magnify and photograph the area. Some of the photographs were introduced at trial. Allen described injuries to D.E.K.'s hymen that were "consistent with a blunt penetrating trauma."

D.E.K. told Allen that Baughman had "fingered" her and that they had had vaginal intercourse. Allen said the injuries were consistent with an object entering the vagina, and consistent with what D.E.K. told her. But she said there was no way for her to know what caused the injury.

### Officer William Coon's Testimony

Officer Coon of the Wamego Police Department was dispatched to talk to D.E.K.'s family when D.E.K.'s father reported she had admitted to having sex with an older man. Earlier that evening, Baughman had called and told Officer Coon that he had been "confronted" by D.E.K.'s mother who said that Baughman had had sex with D.E.K.

Officer Coon interviewed D.E.K. about the July incident. She told him that after Baughman digitally penetrated her, she removed her shorts and underwear and Baughman pulled down his jeans and underwear and they began to have "sex." Officer Coon asked D.E.K. what she meant when she said they had "sex" and she responded that sex was a man's penis in a woman's vagina.

D.E.K. also told Officer Coon about the June incident.

Officer Coon interviewed L.B. and M.H. He testified that there was nothing inconsistent between what these witnesses said and what D.E.K. had told him.

Officer Coon interviewed Baughman. The interview was recorded and then played for the jury. A transcript of the interview was also admitted. Baughman at first denied being with D.E.K. on July 15. He told Officer Coon that he had called D.E.K. after the

motorcycle rally and met her at the same place D.E.K. told Officer Coon that they had met. He also admitted he had been at the same place about a month before.

At first Baughman denied having sex with D.E.K. Officer Coon told him that the police knew sex had occurred and all they were trying to figure out was whether it was consensual. Baughman "advised that it was consensual sex at that point." Then he said he was not sure that his penis had actually been in her vagina. But he said that what he meant by sex was a man's penis in a woman's vagina.

When Officer Coon asked Baughman to clarify, did he or did he not have sex with D.E.K., Baughman said that they may have had sex. Officer Coon asked him to further clarify and Baughman told the officer that at times he just talks around subjects, and then said that he meant that they had had sex. Baughman denied digitally penetrating D.E.K.

Baughman said several times during the interview that he thought D.E.K. was 16 years old, not 15. He said they only had sex for a minute because he was uncomfortable with the age difference.

*Baughman's Defense*

Baughman presented no evidence. When the jury was being instructed, Baughman objected to instruction number 14, the *Allen* instruction, which included the statements, "Like all cases, it must be decided sometime," and "Another trial would be a heavy burden on both sides." The court overruled the objection and gave the instruction.

*Jury Verdict*

The jury found Baughman not guilty on Count I, the June 2007 charge. Baughman was found guilty on Court II, the July 2007 aggravated indecent liberties with a child charge. Baughman did not file any posttrial motions except a departure motion. He was sentenced to 68 months' imprisonment.

With all of this evidence, and the fact that the jury found Baughman not guilty on Count I, I do not believe that the *Allen* instruction could have reasonably misled the jury. I would affirm the jury's conviction.