MODIFIED OPINION[1]

NOT DESIGNATED FOR PUBLICATION

No. 125,619

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

GRANT EUGENE GODAT,
*Appellant.*

MEMORANDUM OPINION

Appeal from Butler District Court; DAVID A. RICKE, judge. Oral argument held May 21, 2024. Original opinion filed July 19, 2024. Modified opinion filed August 16, 2024. Reversed and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Cheryl M. Pierce*, assistant county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: A report from a national hotline spurred a local investigation, which ultimately resulted in Grant Eugene Godat being convicted by a jury of two counts of

---

[1]**REPORTER'S NOTE**:  Opinion No. 125,619 was modified by the Court of Appeals on August 16, 2024, in response to the State's motion for rehearing or modification. The modified language is on slip op. pages 2, 20-26.

1

sexual exploitation of a child and one count of aggravated indecent liberties with a child. The district court sentenced him to three concurrent sentences of life with a minimum of 25 years in prison. On appeal, Godat argues: (1) The district court erred by admitting hearsay evidence; (2) the district court erred by admitting evidence despite a lack of foundation; (3) the State failed to present sufficient evidence to support his two convictions of sexual exploitation of a child; (4) the prosecutor committed reversible error in closing arguments; (5) cumulative error denied him a fair trial; and (6) the district court committed reversible error by denying his motion for durational departure. Because the district court erroneously admitted testimonial hearsay and evidence without proper foundation, we reverse Godat's convictions on Counts One and Two for sexual exploitation of a child and find his prosecutorial error and sentencing arguments moot. And, due to cumulative error, we reverse his conviction on Count Four for aggravated indecent liberties with a child. This case is remanded for a new trial on Counts One, Two, and Four.

FACTUAL AND PROCEDURAL BACKGROUND

Godat was charged with two counts of sexual exploitation of a child (Counts One and Two), off-grid felonies under K.S.A. 2019 Supp. 21-5510(a)(4), (b)(2); one count of sexual exploitation of a child (Count Three), an off-grid felony under K.S.A. 2019 Supp. 21-5510(a)(1), (b)(2); one count of aggravated indecent liberties with a child (Count Four) under K.S.A. 2019 Supp. 21-5506(b)(3)(A), (c)(3); and two counts of sexual exploitation of a child (Counts Five and Six), level 5 person felonies under K.S.A. 2019 Supp. 21-5510(a)(2), (b)(1)(A). The events underlying the charges occurred between June and October 2020.

The circumstances underlying Godat's charges were outlined through testimony in the jury trial.

2

As its main witness, the State called Detective Jennifer Wright of the Wichita Police Department, at the time assigned to the Exploited and Missing Child Unit, Internet Crimes Against Children Task Force. She testified she learned through an investigative assignment that on July 8, 2020, a social networking company called MediaLab/KIK reported a tip to the National Center for Missing and Exploited Children's (NCMEC) CyberTipline. See 18 U.S.C. 2258A (outlining reporting requirements of electronic service providers). In that tip, KIK—as an electronic service provider—reported on files uploaded to their chat service. KIK is a third-party type messaging application that is mostly accessed through a smartphone or a mobile device and operates in a similar manner to Facebook Messenger. NCMEC then forwarded the KIK information to local authorities in a report.

Before the State proceeded with questioning Detective Wright regarding the specifics of the KIK tip to NCMEC, Godat raised a hearsay objection, arguing the NCMEC report identified Godat without a foundation and with no representative of KIK present to testify regarding the report. The State argued the report was not being offered for the truth of the matter asserted; rather, it was a report that caused Detective Wright to further her investigation. The district court overruled Godat's objection and allowed the State to proceed with its line of questioning. Godat later raised a continuing hearsay objection to the specific information contained in the NCMEC report being referenced by Detective Wright.

Both through her testimony and her probable cause affidavit, Detective Wright explained the NCMEC report identified the KIK chat account used to upload the subject files and share with other KIK members as an account with a specific username and email address, both of which were later traced to Godat. All files uploaded to KIK were sexual in nature, contained individuals under the age of 18, and were uploaded between June 1, 2020, and June 15, 2020, from a specific Internet Protocol (IP) address.

3

Detective Wright testified the first thing she did after receiving the NCMEC report was to send a federal summons seeking subscriber information for the reported IP address. The detective also obtained a search warrant to Google for the email account associated with the KIK account and served a summons to KIK, requesting any additional information they could provide outside that found in the NCMEC report.

In her investigation of the IP address, Detective Wright discovered its location was a street address in El Dorado, Kansas, under a subscriber named C.G.—who turned out to be Godat's mother. Detective Wright's search warrant to Google revealed the email address from the KIK report was registered under the name Grant Godat. In her research, she also discovered a Facebook account with the same screen name as the one identified by KIK, which revealed the Facebook page belonged to a Grant Godat in El Dorado, Kansas.

Armed with the above information, Detective Wright then obtained a search warrant to seize Godat's LG smartphone. After its seizure, the detective then obtained a warrant to search the content of Godat's cellphone. She testified the cellphone was provided to Detective Mike Randolph with the Sedgwick County Sheriff's Office for a forensic extraction.

During Detective Randolph's testimony, he outlined how he performed a forensic extraction of Godat's cellphone, the attached microSD card, and provided the report of his extraction to Detective Wright in a thumb drive. Detective Raymond Alverson, with the Wichita Police Department's Digital Forensic Unit, also testified he performed a forensic analysis of the files extracted by Detective Randolph.

Detective Wright testified the extraction report confirmed the KIK application was installed on Godat's cellphone. The extraction also identified from the phone's microSD card a folder that included several files of pornography involving prepubescent and infant

4

children and toddlers. Detective Wright said one specific video file that appeared to have been recorded by the device itself was found. She said the four-second video depicted a young, nude white male child, lying on a specifically described comforter, with a white male's hand on the child's buttocks, exposing the child to the camera.

During her investigation, Detective Wright captured a picture of the child from the video and confirmed it was Godat's current girlfriend's infant child. Detective Alverson also confirmed that specific video was recovered from the deleted files in Godat's cellphone. Detective Wright testified there were other videos found on Godat's cellphone in addition to the one involving the girlfriend's infant child and those from the cybertip report.

The State sought to admit five video files into evidence as State's Exhibits 1 through 5. Godat raised a contemporaneous objection arguing the proposed exhibits lacked foundation, and the district court agreed.

The State proceeded to try to establish foundation for the exhibits by questioning Detective Wright about each of the video files. She testified about the content of each proposed exhibit and the corresponding counts of the charging document each exhibit supported.

At that point, the State again requested to admit the exhibits into evidence, but Godat raised another foundational objection. The district court concurred and required the State to present testimony as to the accuracy of the media the State intended to offer. Throughout Detective Wright's testimony, the State established the following:

- State Exhibits 1 and 2 were two files reported by KIK to NCMEC. The first file was uploaded to KIK from the identified IP address on June 14, 2020, and shows a partially nude child under the age of 10 engaged in sexually

explicit conduct. The second file was likewise uploaded from the same IP address to KIK on June 14, 2020, and shows an adult perpetrating a sex act on an infant child. Exhibit 1 supported Count One and Exhibit 2 supported Count Two of the third amended information. The videos were shared with someone else either through a one-on-one chat or a group conversation on the KIK application, but Detective Wright did not know the specifics.

- State's Exhibit 3 was the video of Godat's girlfriend's infant child and was located on Godat's LG cellphone and supported the charge in Count Four.
- State's Exhibits 4 and 5 were videos located on Godat's LG cellphone in folders, and supported the charges in Count Five and Count Six.

The State again moved to admit the exhibits, and Godat, for a third time, objected on the same foundational grounds. This time, the district court overruled Godat's objection and allowed State's Exhibits 1 through 5 into evidence, finding sufficient foundation was established.

The State subsequently played all five videos for the jury.

Detective Wright then testified how, after the investigation revealed the video files, she and another detective contacted C.G., Godat's mother, at her residence regarding the distribution of child pornography from that location. C.G. confirmed that Godat lived at her home and denied having access to his cellphone. Detective Wright said two other individuals—a husband and wife—were also at the home, although she was unsure whether they lived there or just stayed there. The two were identified as Austin and Karlie Bidwell (aka Karlie Phillips), and although the detective spoke briefly with them, she did not interview them. She later learned that Austin had been a suspect in a sex crime involving a child, but she was unaware of him being convicted of any sex crime. Detective Wright testified C.G. later called her inquiring about the video involving the girlfriend's infant child. C.G. told Detective Wright that she was home the weekend

6

the video was recorded, and that Godat told C.G. it was a video he recorded to share with his girlfriend because her infant child was happy after a bath and was giggling.

Detective Wright said she later interviewed Godat regarding the child pornography videos, but Godat told her he used KIK a long time ago and had not use it recently. When asked about the video of his girlfriend's infant child, Godat admitted he took the video because the child had a rash and he wanted to document it to show the child's mother. Detective Wright recalled that although Godat denied recent use of KIK, he said other people, including his mother, the mother of his child, and his stepson all had access to his cellphone and email account.

During cross-examination, Detective Wright confirmed she never saw Godat upload the videos or talked to anyone who saw Godat upload the videos. She verified she was relying on the information provided by the NCMEC report and did not have any knowledge of the form or process by which KIK provided the information to NCMEC. Detective Wright testified the only knowledge she had of any uploading of videos was according to what KIK reported to NCMEC. The detective explained she was unaware if the videos submitted as State's Exhibits 1 through 5 were accessed or what software would have been used to access the files, because that information was not provided. She confirmed Godat admitted to taking the video of his girlfriend's infant child but denied knowledge of all the other pornography found on his cellphone. The detective testified that the girlfriend's infant child video was in the deleted files of the cellphone but was recovered. Detective Wright also testified she did not know where the actual video files identified from KIK originated.

During redirect questioning, Detective Wright also admitted she did not know where the KIK files originated, how Godat obtained those files, or who received them when Godat shared or distributed the videos. She only knew the files were part of a private chat conversation reported by KIK. She stated at the time of the investigation she

7

did not serve a warrant to KIK to seek additional information because the company was located in Canada, and to obtain a warrant would have required federal cooperation and a "ton of paperwork," including assistance from the United States Attorney's Office. Detective Wright further testified the information available about the upload of videos was limited to the report from NCMEC and the information provided by KIK.

Godat moved for a judgment of acquittal after the State's case-in-chief, claiming the evidence supporting the alleged video uploading on Counts One and Two was hearsay and presenting other arguments related to the other four charges. The district court took under advisement the motion for acquittal on Count Three but denied the motion on all other counts. Godat did not present evidence and the defense rested soon after the ruling on his motion for judgment of acquittal.

The jury found Godat guilty of two counts of sexual exploitation of a child on Counts One and Two. The trial court dismissed Count Three on Godat's motion for judgment of acquittal and the charge was not considered by the jury. The jury also found Godat guilty of one count of aggravated indecent liberties with a child on Count Four. The jury acquitted Godat of the two counts of sexual exploitation of a child found in Counts Five and Six.

Godat moved for a downward dispositional and durational departure. The district court denied Godat's motion, finding no substantial and compelling reason to grant either a dispositional or durational departure, and imposed 3 concurrent life sentences with a minimum 25 years in prison.

Godat timely appeals.

## THE DISTRICT COURT ABUSED ITS
## DISCRETION BY ADMITTING HEARSAY EVIDENCE

On appeal, Godat argues the evidence used by the State—the NCMEC report of the uploaded videos sent to KIK—was inadmissible hearsay and, as a result, the State failed to meet its burden of proof to convict him of sexual exploitation of a child. Deprived of the NCMEC report containing the information from KIK, the State would have had no evidence of the uploading of the videos. Godat argues the hearsay evidence also poisoned his ability to defend the video of his girlfriend's infant child and all three of his convictions should be reversed.

*Preservation*

At trial, defense counsel objected to Detective Wright's testimony regarding the NCMEC report as hearsay, which the district court overruled. Defense counsel then requested a continuing hearsay objection to discussion of the contents of the report. The State does not address preservation in its briefing, and on our review of the record, we have no trouble concluding counsel's timely and specific objection preserved the issue for our review. See *State v. Brown*, 316 Kan. 154, 161, 513 P.3d 1207 (2022); K.S.A. 60-404; Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36).

*Applicable Legal Standards*

"The admission of evidence involves several legal considerations:  determining relevance; identifying and applying legal principles including rules of evidence; and weighing prejudice against probative value. [Citation omitted.]" *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). Appellate courts apply different standards of review depending on the consideration at issue.

9

Whether a particular legal principle or statutory rule governs the admission of specific evidence is a question of law subject to de novo review. See *State v. Miller*, 308 Kan. 1119, 1166, 427 P.3d 907 (2018). But appellate courts typically review a trial court's determination that hearsay is admissible under a statutory exception for an abuse of discretion. *State v. Jones*, 306 Kan. 948, 957, 398 P.3d 856 (2017). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022).

Under K.S.A. 2019 Supp. 60-460, hearsay is defined as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." Hearsay statements must be excluded unless the statement qualifies under a statutory exception prescribed under K.S.A. 60-460, but out-of-court statements that are not offered to prove the truth of the matter asserted are not hearsay. *State v. Sinnard*, 318 Kan. 261, 287, 543 P.3d 525 (2024). "The theory behind the rule excluding hearsay evidence is that the credibility of the declarant is the basis for the reliability of the statement, and the declarant must therefore be available for cross-examination." *State v. Seacat*, 303 Kan. 622, 635, 366 P.3d 208 (2016).

*The district court abused its discretion by admitting hearsay evidence.*

Godat argues the NCMEC report testified to by Detective Wright was "hearsay within hearsay" because the information from KIK was first sent to NCMEC, then to the local authorities, and no one from NCMEC or KIK was present during trial to testify to the information in the report. Godat concedes the State would have been justified in admitting the NCMEC report as non-hearsay to show only that the report prompted local law enforcement's investigation. Yet he contends the State used the content of the report

10

beyond its stated purpose and as the sole evidence to show Godat uploaded illegal video files but did not show how the report qualified under any of the exceptions to hearsay under K.S.A. 2019 Supp. 60-460.

There is no question the NCMEC report, with its included information from KIK, was an out-of-court statement. But the State does not assert any of the exceptions to the hearsay rule under K.S.A. 2019 Supp. 60-460 applied. Rather, the State insists the NCMEC report was not hearsay because it was not being offered for the truth of the matter asserted; instead, it was offered into evidence to show its effect on the listener. That is, the NCMEC report prompted Detective Wright to conduct her own independent investigation. The State argues the report KIK sent to NCMEC was required by federal law, 18 U.S.C. § 2258A, and because of this legal duty, the information in the NCMEC report has a high degree of reliability. The State argues the purpose of introducing the report was to show that after receiving the report, Detective Wright completed an investigation and verified the information received in the report. But this argument holds no water.

As described above, during the trial, Godat raised a hearsay objection as the State began questioning Detective Wright about the contents of the NCMEC report. In response, the State argued hearsay should not apply because it was "nothing more than a police report." The State explained the report was not being offered for the truth of the matter asserted—that Godat did, in fact, commit the crimes—but to show how the report prompted the local investigation. Based on the State's argument, the district court overruled Godat's objection and allowed the State to continue questioning Detective Wright about the NCMEC report. Godat later raised a running hearsay objection to the use of the report in Detective Wright's testimony going forward, which the district court again overruled.

11

Although the State's proposed initial use of the NCMEC report was not hearsay and would have been initially properly admissible to demonstrate why Detective Wright began an investigation, this was but the mechanism which allowed the floodgates to open. The trial transcript clearly shows the contents of the NCMEC report, through Detective Wright's testimony, was then offered to prove Godat's commission of the crimes charged in Counts One and Two. To illustrate as much, we note that for these counts, the district court provided the jury the following instructions:

"[Instruction Nos. 5 and 6]

"In [Counts One and Two], the defendant is charged with Sexual Exploitation of a Child. [(Exhibits One and Two)] The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:
"1. The defendant promoted a performance, knowing its character and content.
"2. The performance included sexually explicit conduct by a person.
"3. The person engaging in the sexually explicit conduct was less than 14 years old. The State need not prove the defendant knew the child's age.
"4. The defendant was 18 or more years old at the time.
"5. This act occurred on or about the 14th day of June 2020, in Butler County, Kansas."

As part of the jury instructions, the jury was also provided the necessary definitions for the elements found in those charges, including "sexually explicit conduct," "promoting," and "performance." This definition instruction outlined how "'[p]romoting' means procuring, transmitting, distributing, circulating" material "for pecuniary profit or with intent to arouse or gratify the sexual desire or appeal to the prurient interest of the defendant or another person." But during trial, the State provided no other forensic or testimonial evidence to prove the videos forming the basis for Counts One and Two—State Exhibits 1 and 2—were transmitted, uploaded, or otherwise "promoted" by Godat, other than the substantive content of the NCMEC report testified to by Detective Wright.

12

To prove the necessary promotion element of the crimes, the State based its evidence solely on Detective Wright's testimony. Based only on the contents of the NCMEC report, Detective Wright believed State's Exhibits 1 and 2 were uploaded to an account she verified through her own investigation to be Godat's KIK account. But the detective neither knew the origin of the two videos nor how they were distributed or shared. She testified the only evidence showing State's Exhibits 1 and 2 were uploaded to Godat's KIK account was limited to the report from NCMEC, which included the information from the KIK report. Excluding the State's reliance on the information provided by KIK to NCMEC, the State provided no evidence showing that Godat uploaded, or promoted, the two videos. Detective Wright testified she did not serve a warrant on KIK to seek information on how the videos were shared because the company was located in Canada, which required going through the federal agency and was uncertain if the United States Attorney's Office would assist. So, the NCMEC report was offered to show the truth of the matter asserted in it and was used as the State's sole evidence to prove Godat committed the charged crimes.

As our Supreme Court held when a statement is offered as evidence to prove the truth of the matter asserted, "'the credibility of the declarant is the basis for its reliability, and the declarant must therefore be subject to cross-examination.'" *State v. Race*, 293 Kan. 69, 76, 259 P.3d 707 (2011). Whether reported to comply with federal law or not, no one from the company operating the KIK application or NCMEC was present at trial and available for cross-examination as to the reliability of the video evidence. Godat was deprived of the right to cross-examine anyone from KIK or NCMEC regarding the reports of the video uploads.

For these reasons, Detective Wright's testimony regarding the contents of the NCMEC report was hearsay and falls under none of the hearsay exceptions specified by K.S.A. 2019 Supp. 60-460. As a result, the district court abused its discretion by allowing

13

the State to admit into evidence her testimony regarding the NCMEC report to prove that Godat uploaded the two videos through the KIK app.

*The State cannot show that the error was harmless.*

Having found error, we must next consider whether the error was harmless. Erroneous admission or exclusion of evidence is subject to review for harmless error under K.S.A. 60-261. *State v. Lowery*, 308 Kan. 1183, 1235-36, 427 P.3d 865 (2018). Under this test, the party benefitting from the error—here, the State—has the burden to show there is no reasonable probability that the error affected the outcome of the trial in light of the entire record. *State v. Gaona*, 293 Kan. 930, 940, 270 P.3d 1165 (2012); see also K.S.A. 2023 Supp. 60-261 (erroneous admission of evidence is harmless unless it affects the defendant's substantial rights).

The State claims any error was harmless. In its view, the NCMEC report simply linked Godat to the crimes by showing Godat had the KIK application on his cellphone, the IP address originated from his mother's house he lived in, and then Detective Wright viewed the video files reported from KIK to NCMEC to observe their content. The State asserts that for these reasons, there is no reasonable possibility the error affected the outcome of the trial. But the State ignores the elephant in the room.

Because Detective Wright's testimony about the information in the NCMEC report was hearsay, the State cannot rely on her testimony about those videos. Her viewing of those video files reported by KIK was the State's only proof to establish Godat promoted the videos on KIK, which was required to convict Godat of sexual exploitation of a child. The State provided no admissible evidence offering the same or similar information to show Godat promoted the videos on KIK. Without such evidence, the State would not have been able to prove all elements of the crime beyond a reasonable doubt.

14

Because the only evidence supporting Godat's convictions on Counts One and Two was inadmissible hearsay, the State fails to meet its burden to show there is no reasonable possibility the evidentiary error could affect the outcome of the trial in light of the record as a whole. *Gaona*, 293 Kan. at 940. Accordingly, we reverse Godat's convictions on Counts One and Two.

Godat also argues the erroneous admission of hearsay evidence should likewise reverse his conviction on Count Four, aggravated indecent liberties with a child. But the effect of the above reversals on his conviction on Count Four is addressed later in this opinion.

THE DISTRICT COURT ABUSED ITS DISCRETION BY
ADMITTING EVIDENCE DESPITE A LACK OF FOUNDATION

Next, Godat claims the district court erred by overruling his foundation objections to State's Exhibits 1 and 2 and admitting them into evidence. Although we have already determined the district court erred by admitting testimonial hearsay, we opt to also consider this issue on its merits, because our review of the record confirms Godat's position.

*Applicable Legal Standards*

When an appellate court reviews a decision to admit evidence, it first considers whether the evidence is relevant and then applies the statutory rules that govern the admission or exclusion of evidence. *State v. Jenkins*, 311 Kan. 39, 44, 455 P.3d 779 (2020). "All relevant evidence is admissible unless prohibited by statute, constitutional provision, or judicial decision." *State v. Meggerson*, 312 Kan. 238, 252, 474 P.3d 761 (2020); see K.S.A. 60-407(f). We review the district court's evidentiary ruling concerning the foundation of evidence for an abuse of discretion. *State v. Hillard*, 315 Kan. 732, Syl. ¶ 12, 511 P.3d 883 (2022). Again, a judicial action constitutes an abuse of discretion if

(1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Bilbrey*, 317 Kan. at 63. As the party making the claim, Godat bears the burden of showing such abuse of discretion. *Keys*, 315 Kan. at 708.

No evidentiary statute requires foundation for documents or other exhibits. Foundation refers to a "'loose term for preliminary questions designed to establish that evidence is admissible.'" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). "'The proponent of a particular kind of evidence, whether it be a physical object or the testimony of a witness, is required to lay a foundation before it may be admitted into evidence.'" *State v. Banks*, 306 Kan. 854, 865-66, 397 P.3d 1195 (2017) (quoting *Wiles*, 302 Kan at 74). "Providing an adequate foundation prevents the finder of fact from being exposed to inadmissible evidence." *Banks*, 306 Kan. at 866.

When considering the adequacy of foundation for video evidence, Kansas appellate courts have applied these legal standards:

> "Videos, like photos, are 'writings' under Kansas evidence rules. See K.S.A. 2019 Supp. 60-401(m); *State v. Dale*, 293 Kan. 660, 662-63, 267 P.3d 743 (2011). The burden of establishing a foundation to admit a writing is 'minimal'—it requires only that the proponent offer evidence that a reasonable juror could rely on to conclude that the writing is what the proponent represents it to be. *Jenkins*, 311 Kan. at 51. The evidence may be circumstantial or indirect. 311 Kan. at 51. 'Photographs are generally admissible after proper foundation and identification if they accurately represent an object that is material and relevant to an issue in the case.' *State v. Kemp*, 30 Kan. App. 2d 657, 662, 46 P.3d 31 (2002). The degree of accuracy required varies depending on the purpose of the photograph. *State v. Suing*, 210 Kan. 363, 365, 502 P.2d 718 (1972). The person who lays the foundation for a photograph need not be the person who took the photograph. *State v. Pruitt*, 42 Kan. App. 2d 166, 176, 211 P.3d 166 (2009). No statute or case requires the witness to be the person who downloaded the video from the cameras or burned it onto the DVD. *State v. Miles*, No. 110,511, 2014 WL 7565767, at *7 (Kan. App. 2014) (unpublished opinion). And those testifying do not have to state specifically that the

pictures are 'fair representations' of what was portrayed. *Suing*, 210 Kan. at 365." *State v. Montgomery*, No. 120,992, 2020 WL 6533260, at *1 (Kan. App. 2020) (unpublished opinion).

But authentication is required before any type of writing may be received into evidence, which may be demonstrated by evidence sufficient to sustain a finding of its genuineness. *Jenkins*, 311 Kan. at 50 (citing K.S.A. 60-464).

*The State failed to lay proper foundation for the two videos.*

At trial, after the prosecutor introduced each exhibit, Godat objected to the evidentiary foundation of all five video exhibits offered by the State. The district court initially agreed with Godat's objection and required the State to establish foundation before the videos could be seen by the jury. Through Detective Wright's testimony, the State then identified each video file, each file's contents, and which charged count each video supported. Godat again objected on foundational grounds and the district court sustained the second objection, requiring the State to lay additional foundation regarding the accuracy of the media the jury would be viewing. The State again solicited testimony from Detective Wright regarding the origin of each video. Godat raised a third objection to foundation, but the district court overruled this objection, finding the State established sufficient foundation and admitted the five videos into evidence.

To be clear, Godat does not extend his argument to the video files admitted by the State pertaining to Counts Four, Five, and Six. His appeal only addresses the two videos the State used to convict Godat under Counts One and Two—that is, State's Exhibits 1 and 2. At the hearing, testimony regarding the origin for these exhibits consisted only of the following:

17

"Q. [PROSECUTOR:] Tell me about where it is that these images came from?

"A. [DETECTIVE WRIGHT:] State Exhibits 1 and 2 were two files that were reported by [KIK] messenger. The first file was uploaded, from the IP address given before, on June the 14th, 2020. And the second one was also uploaded, from the IP address, to [KIK]'s services on June the 14th, 2020."

Godat claims the State failed to lay a proper evidentiary foundation to support the two videos. Specifically, Godat contends the State did not provide any admissible evidence to authenticate State's Exhibits 1 and 2 because the only evidence the State presented was the inadmissible hearsay evidence from Detective Wright's testimony of the NCMEC report.

The State argues State's Exhibits 1 and 2 were relevant to the charges in Counts One and Two, and the exhibits were properly admitted because Detective Wright's testimony provided substantial competent evidence to establish proper foundation.

Applying the above legal standards, we must review Detective Wright's testimony to determine whether the State did, in fact, proffer sufficient evidence for a reasonable juror to conclude the State's video exhibits represented what the State claimed them to be: that is, whether the State sufficiently showed the two videos were the videos Godat promoted on the KIK application on June 14, 2020.

Relying on our Supreme Court's analysis from 1967, the State claims that videos "if shown to be a likeness of what they purport to represent," are "admissible in evidence as aids to the trier of fact in arriving at an understanding of the evidence, the location or condition of an object, or the circumstances of an accident when any such matter is relevant." *Howard v. Stoughton*, 199 Kan. 787, Syl. ¶ 1, 433 P.2d 567 (1967). Despite the age of this caselaw, it is no doubt true that relevant video recordings are admissible into evidence. But our Supreme Court in *Howard* was not faced with a question of foundation, or authenticity, because the officer testifying in that case was on the scene of the car

18

accident of which photos and video recording were taken. But here, the State again—as in its hearsay argument—solely relies on the testimony solicited from Detective Wright regarding the two videos and presented no evidence regarding either video's origins aside from their simple existence in the NCMEC report.

The State does not dispute that State's Exhibits 1 and 2 were uploaded to KIK, provided to law enforcement only through the NCMEC report, and were not found on Godat's cellphone during Detective Wright's later investigation. Detective Wright testified as much, and she maintained throughout trial that she was unaware of how the two files were either uploaded or otherwise shared on the KIK application. Further, her testimony failed to demonstrate any knowledge of the methods or circumstances involved in the preparation of the KIK report or its transmission to NCMEC. Her testimony exclusively relied on the KIK information contained in the NCMEC report, which amounts to double hearsay and suggests a lack of trustworthiness. This is supported by Detective Wright's testimony that she did not obtain additional information from KIK or NCMEC outside the report—not even an affidavit—because it required extra procedures and a "ton of paperwork." The State did not attempt to present any other non-hearsay evidence to show that the videos were trustworthy or accurate.

The State bore the obligation to establish a proper foundation for its video Exhibits 1 and 2. Because Detective Wright's testimony failed to provide a factual basis for the origin or authenticity of the videos provided by KIK in the NCMEC report, and her testimony alone was all the State provided, the State failed to establish proper foundation for the two videos. "Speculative evidence is inadmissible, and a trial court has the responsibility of ensuring that speculative evidence does not reach the jury." *Seacat*, 303 Kan. 622, Syl. ¶ 3. Thus, the district court abused its discretion by admitting State's Exhibits 1 and 2 over Godat's foundation objection.

19

*The State cannot show that the error was harmless.*

Because we find the district court erred, we must next consider whether the error was harmless. As detailed above, we review the error for harmlessness under K.S.A. 60-261. *Lowery*, 308 Kan. at 1235-36. Because the error is statutory rather than constitutional, the standard for harmlessness considers whether there is a reasonable probability the error affected the outcome of the trial. *State v. Campbell*, 317 Kan. 511, 518, 532 P.3d 425 (2023). Again, the State, as the party benefitting from the error, has the burden to show there is no reasonable probability that the error will or did affect the outcome of the trial in light of the entire record. *Gaona*, 293 Kan. at 940.

Godat repeats his reversibility arguments from the hearsay issue, claiming like the admission of hearsay testimony, here the admission of the actual videos themselves cannot be harmless, because the videos "did even more to poison [his] defense than the content of the [KIK] report itself." The State offers no argument as to harmlessness.

As analyzed above, State's Exhibits 1 and 2 were the only evidence presented by the State to prove Godat was guilty of Counts One and Two, sexual exploitation of a child. If the district court had sustained Godat's objections to foundation and denied admission of the two videos, the State would have been left with absolutely no evidence showing Godat engaged in promoting the videos, and thus could not have proved to the jury that Godat was guilty of the crimes found in Counts One and Two.

Consequently, the State again fails establish there is no reasonable possibility that the error affected the outcome of the trial. *Gaona*, 293 Kan. at 940. Because the district court erred by admitting evidence despite the lack of foundation, and we find this error was not harmless, this is an alternative reason for us to reverse Godat's convictions on Counts One and Two.

20

Considering the previous two issues, Godat now argues on appeal there was insufficient evidence to support his convictions of the sexual exploitation of a child in Counts One and Two. Because Detective Wright's testimony regarding the substantive content of the NCMEC report was inadmissible hearsay, the State effectively presented no admissible evidence to establish, at a minimum, the "promot[ion]" element of the crimes. This is the only element of the crimes Godat now challenges on the basis of sufficiency.

Having found Godat's convictions on Counts One and Two require reversal, we must also consider if the evidence presented during the first trial was sufficient to support his convictions—if the evidence was insufficient at the first trial, a second trial on the same charges would violate Godat's right to be free from double jeopardy under the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018); *State v. Jefferson*, 297 Kan. 1151, 1166, 310 P.3d 331 (2013).

*Applicable Legal Standards*

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

"This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *Meggerson*, 312 Kan. at 247.

21

Despite finding much of the evidence inadmissible above, we nevertheless "must consider even erroneously admitted evidence from the first trial when reviewing a sufficiency challenge." *Chandler*, 307 Kan. at 668; see also *Jefferson*, 297 Kan. at 1166 ("Notably, even though we have determined that the district court erred in admitting [defendant's] videotaped statement, we must nevertheless consider that erroneously admitted evidence in reviewing the sufficiency of the evidence presented at the first trial."); *State v. Pabst*, 268 Kan. 501, 512, 996 P.2d 321 (2000) ("'[A] reviewing court must consider *all* of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause.'" [Emphasis added.]) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 41, 109 S. Ct. 285, 102 L. Ed. 2d 265 [1988]). And having found the contents of the NCMEC report were offered to the jury as substantive evidence through both video exhibits and Detective Wright's testimony, we must now consider that evidence for this analysis.

*The State presented sufficient evidence to support Godat's convictions.*

The State has the ultimate duty to present evidence proving each element of the crime beyond a reasonable doubt. *State v. Buchanan*, 317 Kan. 443, 454, 531 P.3d 1198 (2023). As noted above, Godat was convicted of sexual exploitation of a child under K.S.A. 2019 Supp. 21-5510(a)(4), which criminalizes "promoting any performance that includes sexually explicit conduct by a child under 18 years of age, or a person whom the offender believes to be a child under 18 years of age, knowing the character and content of the performance." As depicted above, jury instructions Nos. 5 and 6 outlined to the jury the elements the State was required to prove. Instruction No. 8 further clarified the required elements by defining "[s]exually explicit conduct," "[p]romoting," and "[p]erformance." A review of the definition of promotion shows it could include an act of uploading a video or sharing the video with another person through the KIK chat application, as the State alleges.

The State claims there was sufficient evidence for a rational jury to find Godat guilty beyond a reasonable doubt. It maintains the independent investigation performed by Detective Wright established the following, which—even without the erroneously admitted evidence—together constitute sufficient evidence for a rational jury to find Godat guilty beyond a reasonable doubt of sexual exploitation of a child:

- Detective Wright verified the subscriber information of the IP address to the residence of Godat's mother;

- Godat resided at his mother's residence at the time the videos were uploaded;

- Detective Wright verified Godat had the KIK application installed on his cellphone;

- Detective Wright verified the email address obtained from the NCMEC report belonged to Godat;

- Witnesses testified that they had used the Godat's cellphone but did not use his email or the KIK application to upload child pornography; and

- Detective Wright testified the videos reported by KIK were distributed or shared.

Despite this evidence, Godat argues a rational fact-finder could not have found beyond a reasonable doubt he actually promoted a performance as required under K.S.A. 2019 Supp. 21-5510(a)(4) without considering the information from KIK in the NCMEC report. And it is true that the State provided no evidence other than Detective Wright's testimony about the NCMEC report to support the promotion element of the crimes. But as stated above, we must consider all the evidence admitted at trial—even the erroneously admitted testimony and report—as part of our sufficiency analysis. Viewing the evidence in the light most favorable to the State, the videos contained in the NCMEC report, combined with Detective Wright's testimony and investigation into how the information found in the report was connected to Godat's IP address, home address, and cell phone, lead us to conclude the evidence was sufficient to prove Godat's guilt. That is, we cannot

23

say the lack of evidence was so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt. *Meggerson*, 312 Kan. at 247.

Because all evidence admitted at trial would have been sufficient to support Godat's convictions on Counts One and Two, although we reverse his convictions above due to trial errors, we remand the charges for retrial. *Hernandez*, 294 Kan. at 209; see *Burks v. United States*, 437 U.S. 1, 16-18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *State v. Dumars*, 37 Kan. App. 2d 600, 608, 154 P.3d 1120 (2007) (When a conviction is reversed due to trial error, double jeopardy generally does not bar retrial, but when a conviction is reversed for insufficiency of the evidence, double jeopardy bars any further prosecution for that particular offense.).

## WE NEED NOT ADDRESS WHETHER THE PROSECUTOR COMMITTED REVERSIBLE ERROR

Next, Godat argues the prosecutor committed error during closing arguments by misstating the evidence and inappropriately shifting the burden of proof. But because we reverse Godat's convictions on the evidentiary concerns, we need not address this argument and find his prosecutorial error claims are moot.

## CUMULATIVE ERRORS DEPRIVED GODAT OF A FAIR TRIAL ON COUNT FOUR

Godat next argues his convictions must be reversed and remanded for a new trial because cumulative error enabled the State to achieve wrongful convictions against Godat.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan.

24

321, 345, 446 P.3d 472 (2019). In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. 310 Kan. at 345-46. If any of the errors being aggregated are constitutional in nature, their cumulative effect must be harmless beyond a reasonable doubt. *State v. Robinson*, 306 Kan. 1012, 1034, 399 P.3d 194 (2017).

Here, Godat has already convinced us the central evidence supporting his convictions for sexual exploitation of a child was inadmissible on hearsay and foundational grounds. These two errors resulted in the jury viewing two graphic and inadmissible videos which were connected to him through improper testimony.

Having already reversed Godat's convictions on Counts One and Two, we focus on whether the cumulative effects of the errors impacted the jury's guilty verdict on Godat's conviction on Count Four, aggravated indecent liberties with a child. State's Exhibits 1 and 2 contained graphic depictions of very young children engaged in obviously sexual behavior and were connected to Godat through inadmissible means. On the contrary, State's Exhibit 3, which was the primary evidence supporting Count Four, contained a video of Godat's girlfriend's infant child after a bath, and did not display— when viewed in isolation—overtly criminal conduct. The purpose for Godat's recording of this video was disputed at trial and the jury was left to determine its criminality.

Exhibits 1 and 2, which should not have been admitted by the district court, were viewed by the jury before it viewed Exhibit 3. The content of the first two videos was so prejudicial and inflammatory that it would be impossible for a reasonable jury to divorce its impression of Godat—conceived from those two graphic videos—from its consideration of Godat's conduct in the Exhibit 3 video. See *State v. Coburn*, 38 Kan. App. 2d 1036, 1056-59, 176 P.3d 203 (2008) (holding that highly inflammatory nature of

child pornography evidence was sufficiently prejudicial to deny a defendant a fair trial.) As our court has reasoned, relying on United States Supreme Court opinions:

> "'The Government should not have the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds.' *Delli Paoli v. United States*, 352 U.S. 232, 248, 77 S. Ct. 294, 1 L. Ed. 2d 278 (1957) (Frankfurter, J., dissenting) (cited with approval in *Bruton v. United States,* 391 U.S. 123, 129, 88 S. Ct. 1620, 20 L. Ed. 2d 476 [1968])." *Coburn*, 38 Kan. App. 2d at 1056.

The totality of the circumstances establishes Godat was substantially prejudiced by the errors. But as discussed above, we do not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. *Aguirre*, 313 Kan. at 209. Whether the evidence against Godat supporting Count Four—mainly State's Exhibit 3—in isolation and separate from the two videos was sufficient to support his conviction on Count Four is a question for a fact-finder to determine. As a result, we reverse Godat's conviction on Count Four and remand for a new trial on the charge of aggravated indecent liberties with a child.

### WE NEED NOT CONSIDER IF THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY DENYING GODAT'S MOTION FOR DURATIONAL DEPARTURE

In Godat's final argument, he claims the district court committed legal error during sentencing because it did not understand the Kansas statute controlling departure sentencing in an off-grid case. He maintains this error requires reversal and this matter should be remanded for a new sentencing hearing applying the correct legal standard. However, because we reverse and remand Godat's convictions for a new trial, this argument is rendered moot.

Reversed and remanded with directions.